IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HOME INSTEAD, INC. | ) | Civil Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HOME CARE SERVICES NETWORK, LLC, d/b/a HOME INSTEAD HOME CARE SERVICES, LLC, | ) ) ) | **COMPLAINT** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Home Instead, Inc. ("Home Instead") for its Complaint against Defendant Home Care Services Network, LLC d/b/a/ Home Instead Home Care Services, LLC ("Home Instead Home Care" or "Defendant") alleges and avers as follows:

## I. JURISDICTION AND VENUE

1. This is an action seeking injunctive relief for infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and state law.

2. Jurisdiction is predicated upon, *inter alia*, 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1367(a) and 1338.

3. Venue is proper under, *inter alia*, 28 U.S.C. § 1391 and pursuant to a Consent Agreement entered into between the Parties.

## II. PARTIES

4. Plaintiff Home Instead, Inc. is a Nebraska corporation with its corporate headquarters at 13323 California Street, Omaha, NE 68154.

5. On information and belief, Defendant is a Louisiana limited liability company, with its headquarters located at 905 E. 7th Ave., Suite 6, Oakdale, LA 71463.

### III.   FACTS COMMON TO ALL COUNTS

#### A.   HOME INSTEAD

6.   Plaintiff Home Instead, through its network of independently owned and operated Home Instead Senior Care® franchised businesses (the "HISC Network"), is established as a leader in the in-home care industry.  The HISC Network provides in-home care to senior citizens to help them continue to live healthy and productive lives.  The services the HISC Network offers include helping seniors with the tasks of daily life, providing companionship, home helper services, and personal care.  The HISC Network provides these services throughout the United States, including in this Judicial District.

7.   Home Instead and the HISC Network have been engaged in the sale, and offering for sale, and/or promotion of the services offered by the HISC Network continuously since 1994.

#### B.   HOME INSTEAD'S TRADEMARK RIGHTS

##### Home Instead's Service Marks

8.   Long prior to the acts of Defendant complained of herein, Home Instead commenced use of the distinctive HOME INSTEAD service mark and the HOME INSTEAD SENIOR CARE and design service mark ("the Home Instead Marks").

9.   Home Instead licenses the Home Instead Marks exclusively to the HISC Network. Home Instead and the HISC Network prominently display and promote the Home Instead Marks through marketing, promotional materials and Internet websites.  As a result of Home Instead's and the HISC Network's extensive use and promotion of the Home Instead Marks, the public associates the Home Instead Marks with Home Instead and services that the HISC Network provides.

10. Home Instead has expended considerable resources to create and develop the Home Instead Marks in connection with the sale and provision of the services provided by the HISC Network, as well as with the development of promotional materials and websites.

11. Due to Home Instead's substantial and significant sales, advertising, promotion, and publicity, the Home Instead Marks are recognized as emanating from, or being associated with Home Instead and/or the HISC Network.

12. The Home Instead Marks are each inherently distinctive and are recognized by members of the consuming public as indicators of high quality services associated with Home Instead and/or the HISC Network.

13. Home Instead thus has common law rights in and to the Home Instead Marks. Home Instead also possesses federal trademark registrations in and to certain of the Home Instead Marks.

**Home Instead's United States Service Mark Registrations**

14. Home Instead owns United States Service Mark Registration No. 1,936,060 for the mark HOME INSTEAD for various services in International Class 42.

15. Home Instead further owns United States Service Mark Registration No. 3,584,742 for the mark HOME INSTEAD SENIOR CARE and design for certain services in International Class 45, pictured below:



## C.   DEFENDANT'S ACTS

### Defendant's Use of its Infringing Mark

16.     After Home Instead's use of the Home Instead Marks, Defendant, without consent or any other permission from Home Instead, began offering to sell and selling the same type of services (in-home care services) to substantially similar consumers (e.g., senior citizens) under the infringing mark HOME INSTEAD HOME CARE SERVICES (hereinafter the "Infringing Mark").

17.     Both Defendant and Home Instead transact business in and through interstate commerce.

18.     In or around December 2010, Home Instead discovered that Defendant was using the Infringing Mark.

19.     Upon discovering Defendant's infringing action, Home Instead contacted Defendant and demanded that Defendant cease use of the Infringing Mark.

20.     As a result of this contact, the parties ultimately entered into a Consent Agreement whereby Defendant agreed, among other things, that it would not "use the HOME INSTEAD mark, or any mark confusingly similar to the HOME INSTEAD mark, including, but not limited to, Homestead Home Care Services in connection with identifying or promoting any of its products and services."   [*See* Consent Agreement, attached hereto as Exhibit A, at ¶ 1].

21.     In addition, Defendant agreed that it would take the appropriate steps to change its corporate name and trade name in Texas and Louisiana to a name that is not confusingly similar to, or does not include the phrase HOME INSTEAD or HOMESTEAD.  [Ex. A, Consent Agreement at ¶ 2].

22. Defendant further agreed and acknowledged in the Consent Agreement that "in the event of its breach of this Agreement, Home Instead will suffer an irreparable injury, such that no remedy at law will afford it adequate protection against, or appropriate compensation for, such injury. Accordingly, Home Instead Home Care agrees that Home Instead shall be entitled to specific performance of Home Instead Home Care's obligations under this Agreement, as well as such further relief, including, but not limited to injunctive relief, as may be granted by a court of competent jurisdiction without the necessity of proof of actual damages." [Ex. A, Consent Agreement at ¶ 7].

23. As required by the Consent Agreement, Defendant did change its corporate name to Home Care Services Network, LLC.

24. However, despite its obligations under the Consent Agreement and otherwise, Defendant continues to use the Infringing Mark or a confusingly similar mark as its trade name.

25. Since the execution of the Consent Agreement, Home Instead has been contacted by individuals seeking to complain about Defendant's services because these individuals believed that Defendant was affiliated with Home Instead.

26. In fact, one particular individual whose mother used Defendant's services contacted Home Instead to complain that his mother's care worker was not getting paid by Home Instead as this individual believed that Defendant was associated with Home Instead.

27. Upon information and belief, Defendant's creation and continued use of the Infringing Mark has been done willfully in an effort to impermissibly copy the Home Instead Marks, to trade on the goodwill Home Instead has created in the Home Instead Marks, and to mislead customers into believing there is an association between Defendant and the HISC Network.

28. As demonstrated above, Defendant's appropriation of the Home Instead Marks has caused confusion, mistake, and deception and is likely to continue causing confusion, mistake, or deception as to the source or origin of Defendant's services because of the relatedness of such services to those the HISC Network provides.

29. By reason of Defendant's conduct, Home Instead has suffered and will continue to suffer damage unless restrained by this Court. Home Instead is without an adequate remedy at law.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

**(Violation of Lanham Act, 15 U.S.C. § 1114)**

30. Home Instead realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth in full herein.

31. Defendant's aforesaid use of the Infringing Mark is likely to continue to cause confusion, mistake, or deception among customers and the public as to the source or origin of Defendant's services, in that consumers are likely to believe that Defendant or its services are legitimately connected with Home Instead and/or the HISC Network.

32. Defendant's use of the Infringing Mark infringes Home Instead's rights in its registered marks in violation of the Lanham Act, 15 U.S.C. § 1114.

33. Upon information and belief, Defendant's conduct was and is willful and intentional.

34. By reason of Defendant's conduct, Home Instead has suffered and will continue to suffer damage unless restrained by this Court. Home Instead is without an adequate remedy at law.

## COUNT II
## FALSE DESIGNATION OF ORIGIN

**(Violation of Lanham Act, 15 U.S.C. 1125(a))**

35. Home Instead realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth in full herein.

36. The Home Instead Marks are entitled to protection.

37. Defendant's use of the Infringing Mark constitutes false designation of origin or sponsorship of Defendant's merchandise and services and tends to falsely represent that Defendant's services originate from Home Instead and the HISC Network or that Defendant's services and/or Defendant have been sponsored, approved, or licensed by Home Instead or are in some way affiliated or connected with Home Instead and/or the HISC Network.

38. Defendant's conduct is likely to confuse, mislead and deceive Defendant's customers, purchasers and members of the public as to the origin of Defendant's services or cause said persons to believe that Defendant's services and/or Defendant have been sponsored, approved, authorized or licensed by Home Instead or are in some way affiliated or connected with Home Instead, all in violation of 15 U.S.C. § 1125(a).

39. Upon information and belief, Defendant's conduct was and is willful and intentional.

40. By reason of Defendant's conduct, Home Instead has suffered and will continue to suffer damage unless restrained by this Court. Home Instead is without an adequate remedy at law.

## COUNT III
## BREACH OF CONSENT AGREEMENT

41. Home Instead realleges and incorporates all the preceding paragraphs as if set forth in full herein.

42. In February 2011, Plaintiff and Defendant entered into a Consent Agreement pursuant to which Defendant agreed, among other things, that it would not use the Home Instead mark or any mark confusingly similar to the HOME INSTEAD mark.

43. In breach of the Consent Agreement, Defendant continued to use the name Home Instead Home Care Services or a mark confusingly similar to the HOME INSTEAD mark.

44. By reason of Defendant's conduct, Home Instead has suffered and will continue to suffer damage unless restrained by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Home Instead prays that:

1. Defendant and its affiliated companies, principals, officers, employees, directors, servants, agents, representatives, distributors, attorneys and persons, firms or corporation under their control or in active concert or participation with Defendant be permanently enjoined and restrained from:

(a) directly or indirectly displaying, advertising, promoting, providing, selling or offering for sale, licensing, supplying or otherwise distributing services of any kind using the mark HOME INSTEAD HOME CARE SERVICES or any associated mark or any other name or mark that is confusingly similar to the Home Instead Marks owned by Plaintiff Home Instead;

(b) directly or indirectly engaging in any conduct that tends to falsely represent—or is likely to confuse, mislead, or deceive purchasers, Defendant's customers and/or members of the public to believe—that the actions of Defendant are sponsored by, licensed by, or in any way affiliated or connected with Plaintiff Home Instead and/or the HISC Network;

2. Order the impounding for destruction of all copies or reproductions of any and all clothing, apparel, stationery, circulars, catalogs, charts, brochures, advertising materials, labels, packages, signs, and other materials in Defendant's possession or under its control which contain the Infringing Mark or which contain other marks confusingly similar to the Home Instead Marks owned by Plaintiff Home Instead;

3. Order an accounting of Defendant's profits;

4. Award Plaintiff Home Instead all profits received by Defendant from sales and revenues of any kind made as a result of its infringing activities or otherwise unlawful actions;

5. Award Plaintiff Home Instead all damages sustained by Plaintiff Home Instead as a result of Defendant's infringing activities or otherwise unlawful actions in an amount to be proved at trial, and that such damages be trebled pursuant to, *inter alia*, 15 U.S.C. § 1117.

6. Award Plaintiff Home Instead interest, costs, and attorney's fees pursuant to, *inter alia*, 15 U.S.C. § 1117;

7. Award Plaintiff Home Instead punitive damages for the intentional, willful and wanton nature of Defendant's acts;

8. Order that Defendant file with this Court and serve upon Plaintiff Home Instead within thirty (30) days following this Court's injunction issued in this action, a written report, under oath, setting forth in detail the manner and form in which Defendant has complied with such injunction; and

9. Award Plaintiff Home Instead such other and further relief as the Court deems just and proper.

DATE:  May 24, 2012.

>Respectfully submitted,
>
>‎    s/  Christopher M. Bikus    
>Christopher M. Bikus (#20951)
>Henry L. Wiedrich (#23696)
>HUSCH BLACKWELL LLP
>1620 Dodge Street, Suite 2100
>Omaha, NE 68102
>Telephone: (402) 964-5000
>Facsimile: (402) 964-5050
>chris.bikus@huschblackwell.com
>henry.wiedrich@huschblackwell.com
>
>**ATTORNEYS FOR PLAINTIFF**